David Chami
Price Law Group, P.C.
1204 E. Baseline Rd., Suite 102
Tempe, Arizona 85283
Tel: 866-881-2133
Fax: 866-401-1457
david@pricelawgroup.com

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff* NICK FISHER and the Classes

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| NICK FISHER, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 2:18-CV-00309-DLR |
| v. | |
| ONE WAY FUNDING, LLC, a New York limited liability company, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, FOR CLASS CERTIFICATION, AND FOR LEAVE TO CONDUCT DISCOVERY & MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

This case challenges Defendant One Way Funding, LLC's ("Defendant" or "One Way Funding") serial violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*—specifically, its bar against making unauthorized calls to cellphones and its requirement that callers honor do not call requests. Plaintiff Nick Fisher ("Plaintiff" or "Fisher") filed his Class Action Complaint on January 29, 2018 and served Defendant on February 28, 2018. To date, Defendant has failed to answer or otherwise respond to the Complaint.

The case should be certified as a class action, and Defendant should be found in default on a class basis. The well-pleaded allegations of the Complaint detail Defendant's repeated, clear-cut violations of the TCPA. The case is straightforward: One Way Funding places telephone calls to

1

consumers' cellular telephone using both a pre-recorded voice and an automatic telephone dialing system ("ATDS") without first obtaining prior express consent. Further, when consumers attempt to opt-out of receiving future telephone calls from Defendant by asking for the calls to stop, they are simply ignored, and the calls continue unabated. Hence, Defendant violates the TCPA—and the privacy rights it was enacted to protect—as a matter of routine policy and procedure.

Moreover, each of the *Eitel* factors weighs in favor of default judgment. First, absent a default judgment Plaintiff would suffer prejudice from a lack of any effective remedy. Second, Plaintiff's well-pleaded factual allegations demonstrate clear-cut violations of the TCPA. Third, the monetary sum sought is reasonable given that Plaintiff is only seeking the statutory minimum. Fourth, in the absence of Defendant's appearance, no dispute concerning material facts exists. Fifth, Defendant's default was not the product of excusable neglect, and this is especially so when considering its history of dodging TCPA litigation. And finally, a decision on the merits of the case is impossible because Defendant refuses to appear and participate in the litigation.

Plaintiff also respectfully requests a period of limited class discovery regarding the issue of damages for a period of 120-days. Plaintiff intends to serve subpoenas upon the telephone service providers for each of the three telephone numbers that Defendant utilized to contact Plaintiff. Plaintiff will then use the outbound call records for each of the numbers to demonstrate the number of individual class members that were called as well as the number of calls made to each member. This process will allow the Court to make a factual determination as to the issue of damages. Further, to the extent the Court is hesitant to enter default on a class-wide basis for any other reason, Plaintiff additionally requests permission to conduct discovery related to those issue in the form of written discovery requests and subpoenas to produce documents.

Class-wide default is needed to put an end to One Way Funding's persistent calls. Defendant has already been sued for TCPA violations at least three times previously. *See, e.g., Beahm v. One Way Funding, LLC*, Case No. 1:16-cv-00491-RP (filed Apr. 19, 2016); *see also Terri Alves v. One Way Funding, LLC et al.*, Case No. 2:17-cv-01760-MWF-KS (filed Mar. 3,

2017); *see also Melingonis v. One Way Funding, LLC*, Case No. 3:17-cv-00465-WQH-BLM (filed Mar. 7, 2017). Consistent with its practice in this case (to date), Defendant simply ignored these other lawsuits, opting instead to face default. However, in both the *Beahm* and *Terri Alves* cases, the lawsuits were dismissed without prejudice without any judgment being entered against One Way Funding. Only in *Melingonis*'s case did the Court enter a default judgment, which was granted *on an individual basis only*. In short, Defendant elects to default on such allegations as a means of avoiding class-wide liability. This Court should put an end to such gamesmanship.

In brief, the Court should certify both classes and enter a class-wide default judgment as to all claims. The Court should also grant Plaintiff leave to conduct limited discovery.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant is a financial services company that provides capital to small businesses. (Compl. ¶ 12.) In an effort to to generate leads for its financial products, Defendant conducts a wide scale telemarketing campaign that features repeated calls to consumers' cellular telephones without any prior express consent—a plain violation of the TCPA. (*Id.* ¶ 13.) In placing the unsolicited calls at issue, One Way utilized a sophisticated ATDS to place the calls *en masse*. (Compl. ¶ 14.) Further, despite repeated attempts by consumers to opt out of future calls, Defendant continues to call. (*Id.* ¶ 15.) And to make matters worse, One Way conceals its identity by using the name "Fast Funding" while making its pre-recorded calls. (*Id.* ¶ 24.) "Fast Funding" is not a registered d/b/a or trade name of Defendant. Unsurprisingly, these practices have led to significant complaints from consumers, many of which are posted on the internet. (*See Id.* ¶ 16.)

In Fisher's case, he received multiple prerecorded calls from Defendant with a nearly identical message stating: "Hi this is John from Fast Funding, you have been pre-approved for a working capital loan. Press one to speak with me, or one of my associates about your offer, again, press one to go over your pre-approved working capital loan." (Compl. ¶ 23.) Plaintiff has received the telephone calls from the following numbers: (631) 239-8720, (631) 239-8731, and (516) 203-7559. (*Id.* ¶ 26.) The number (631) 239-8731 is listed on Defendant's website and is

answered by employees and agents stating that the caller has reached "Fast Funding." (*Id.*) On multiple occasions, Plaintiff spoke with agents of One Way Funding and requested to be placed on its do not call list. (*Id.* ¶¶ 24-25.) Despite these repeated requests, Defendant continued to place calls to Plaintiff. (*Id.* ¶ 25.) Plaintiff does not have a relationship with Defendant, has never provided his telephone number to Defendant, and never provided Defendant with any form of prior express consent to place pre-recorded and/or autodialed calls to him. (*Id.* ¶ 27.)

Plaintiff filed his Complaint on January 29, 2018 alleging two causes of action. (Dkt. 1.) First, on behalf of himself and the Pre-recorded No Consent Class Fisher alleged that One Way placed calls without obtaining prior express consent. Second, on behalf of the Pre-recorded Stop Call Class Fisher claimed that he and others had been called after having requested not to be. (*Id.*)

Fisher obtained service—One Way Funding was served on February 28, 2018 at 2:59 p.m. via its President Joseph Reinhardt, at Defendant's business location, which is an operating call center. (Dkt. 12.) Defendant's deadline to answer was March 21, 2018. (Dkt. 12.)

On April 5, 2018, having received no response to the Complaint at all, Plaintiff filed an application for entry of default pursuant to Rule 55(a). (Dkt. 13.) The clerk entered default on April 6, 2018. (Dkt. 14.) Plaintiff thereafter mailed the Entry of Default to Defendant directed to the attention of its president, Joseph Reinhardt, who signed the certified mail receipt. (*See* Certified Mail Receipt, a true and accurate copy is attached hereto as Ex. A.)

As set forth below, the Court should certify the classes and enter default judgment, or, in the alternative, the Court should grant leave to conduct limited discovery.

**III.   ARGUMENT**

The Court should enter a class-wide default judgment in Plaintiff's favor based on his well-pleaded allegations. Additionally, Plaintiff should be afforded leave to conduct discovery regarding matters that lay peculiarly within Defendant One Way Funding's knowledge or control.

**A.   The Court has jurisdiction over Defendant and the subject matter of this case.**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This Court has previously held that telephone calls directed at a recipient within the state of Arizona was sufficient to establish personal jurisdiction. *See Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) ("The Court finds that complaint in this case is sufficient to establish specific jurisdiction, based on the allegation that Defendant made calls to Plaintiff's Arizona number and the fact that those calls are the basis for Plaintiff's claims."). Further, it is well settled that federal district courts possess subject matter jurisdiction over TCPA claims. *See Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 387 (2012).

Applied here, Fisher alleges that he received calls to his cellular telephone number in Arizona from One Way and the calls are the basis of this case. Nothing more is needed to establish personal jurisdiction—the conduct giving rise to this action was directed to Arizona. Next, given that Plaintiff alleges violations of the TCPA, this Court, as explained in *Mims*, has subject matter jurisdiction. Finally, in addition to federal question jurisdiction, this Court has jurisdiction over the subject matter because the classes consist of over 100 individuals, at least one member of each class is located in a state other than the state of Defendant, and over $5 million is in controversy. Accordingly, the Court plainly has jurisdiction here.

**B.     The Court should enter default judgment because the well-pleaded allegations of the Complaint establish that One Way serially violated the TCPA.**

"Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). However, "a 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

When reviewing a request for entry of default judgment, courts in the Ninth Circuit analyze the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As explained below, each of these factors weighs in favor of granting Plaintiff's motion.

### 1. Plaintiff would face substantial prejudice absent an entry of default.

The first *Eitel* factor examines the potential prejudice to Plaintiff if default judgment is not entered. *See Lowery v. Account Outsourcing Group, LLC*, 2017 WL 3188950, at *2 (E.D. Cal. July 27, 2017). Courts find sufficient prejudice when plaintiffs are left with no other recourse against a defendant. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1054 (N.D. Cal. 2010) ("[D]enial of Plaintiff's request for judgment and injunctive relief would leave Plaintiff with no means to prevent further infringement by Defendants, and leave Plaintiff prone to continued circumvention of its security measures by Defendants.").

Here, Fisher would face substantial prejudice. Absent a default judgment Fisher would be without any recourse and could be subjected to Defendant's continued harassment. And when considering One Way's pattern of TCPA violations, despite 3 prior TCPA lawsuits, the likelihood of future harassment is substantial. Further, absent an entry of default judgment, the Classes would also continue to be subjected to Defendant's harassment and Defendant would continue to avoid answering for its unlawful conduct. In sum, the prospect of prejudice against Plaintiff and the Classes weighs heavily in favor of granting Plaintiff's motion for default judgment.

### 2. The Complaint contains well-pleaded allegations that establish violations of the TCPA—the default pleading standards are met.

"With regard to the second and third factors, the plaintiff is required to 'state a claim on which the [plaintiff] may recover.'" *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (quotations omitted). In other words, these factors weigh in favor of default when plaintiff has stated plausible claims for relief under the pleading standards of Rule 8. *See Sales Force Won! Limited v. Teixidor Enterprises Incorporated*, 2018 WL 20183919, at *2 (D. Ariz. May 11, 2018). Both of Fisher's causes of action are addressed separately below.

#### a. *Plaintiff sufficiently alleges his first cause of action*

The TCPA makes it unlawful for any person "to make any call [other than a call made for emergency purposes or made with the prior express consent of the called party] using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to state a TCPA claim, "a plaintiff must allege three elements: (1) a call to a cellular telephone, (2) using an ATDS or an artificial or prerecorded voice, (3) without the recipient's prior express consent." *Mata v. Veros Credit, LLC*, , 2017 WL 2644633, at *2 (C.D. Cal. Jan. 20, 2017).

Plaintiff's allegations lay out a clear prima facie case. Specifically, he pleaded that Defendant conducts a wide-scale telemarketing campaign in which calls were placed to his cellular telephone, that the Defendant utilized an ATDS and a pre-recorded voice to make said calls, and that Plaintiff never gave any consent to Defendant to place calls to his cellular telephone. (Compl. ¶¶ 1, 4-6, 13-14, 17-19, 21-29.) Nothing further is needed to state a claim under the TCPA; therefore, Plaintiff is entitled to a default judgment on his first cause of action.

### b.   *Plaintiff sufficiently alleges his second cause of action.*

The elements of the second cause of action are essentially the same as the first cause of action: a violation of 47 U.S.C. § 227(b)(1)(A)(iii) has occurred when Defendant (1) called Plaintiff's cellular telephone; (2) using an ATDS or prerecorded voice; (3) without Plaintiff's prior express consent. *Mata*, 2017 WL 2644633, at *2. The distinction between the first and second cause of action involves the revocation of prior express consent. That is, any supposed consent that Defendant may have been able to show for the initial call was expressly revoked when Plaintiff informed One Way Funding to stop calling him. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) ("[W]e agree that the TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems.").

Plaintiff expressly pleaded that he received additional calls to his cellular telephone despite expressly revoking any potential prior express consent. (Compl. ¶¶ 45-51.) Specifically, Plaintiff pleaded that he spoke with a representative of One Way Funding to directly inform it to

7

stop calling him. (*Id.* ¶ 24.) Furthermore, Plaintiff requested on multiple occasions for the prerecorded and/or autodialed calls to stop. (*Id.* ¶ 25.) However, despite repeated revocations of consent, One Way Funding failed to cease the transmission of calls. (*Id.*) Plaintiff's facts are well pleaded and, thus, he is entitled to a default judgment on his second cause of action.

### 3. The monetary sum at stake is reasonable.

The fourth factor balances "'the amount of money at stake in relation to the seriousness of the [d]efendant's conduct.'" *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010). Courts repeatedly find minimum statutory damages to be reasonably in regards to the fourth *Eitel* factor. *See Elektra Entertainment Group Inc.*, 226 F.R.D. at 393 ("[T]he amount of statutory damages and costs requested consists of discretionary awards and statutory minimums . . . Thus, this factor favors granting default judgment as well."); *see also J & J Sports Productions, Inc. v. Hernandez*, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010) ("[P]laintiff's request for statutory damages and damages for conversion are tailored to defendants' specific wrongful conduct. . . . Under these circumstances, the undersigned concludes that this factor favors the entry of default judgment."); *see also Moore v. E-Z-N-Quick*, 2014 WL 1665034, at *5 (E.D. Cal. Apr. 24, 2014) ("Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the California statutes. The Unruh Act provides for minimum statutory damages of $4,000 for each violation. . . . Since a violation of the ADA establishes a violation of the Unruh Act, Plaintiff is entitled to statutory damages of $4,000.00.").

Plaintiff requests the statutory minimum in damages in the amount of $500 per call made to the Classes. *See* 47 U.S.C. §227(b)(3)(B). At this time, Plaintiff is unable to specify the total sum because only Defendant possesses the necessary information. To that end, Plaintiff requests permission to conduct limited damages discovery and to subsequently file a motion for judgment awarding damages at a date to be set by the Court. By utilizing limited discovery, Plaintiff will be able to articulate a specific sum of commensurate damages by utilizing Defendant's outbound call list. That is, Plaintiff intends to serve subpoenas on the telephone service providers of the following numbers: (631) 239-8720, (631) 239-8731, and (516) 203-7559. Once the phone

8

records for each number are produced, then Plaintiff will analyze the outbound calls to identify each unique telephone number called. Next, Plaintiff will identify the total number of outbound calls from Defendant to each unique telephone number. Further, Plaintiff may hire an expert witness to opine as to the accuracy of this process, if necessary. In short, the process is straightforward and will arrive at an identifiable number for the Court to consider. A similar process was employed by another Court, which faced a similar situation regarding a Defendant's default in a TCPA class action lawsuit. *See Whitaker v. Bennett Law, PLLC*, Case No. 13-cv-3145-L(NLS), 2015 WL 12434306 (S.D. Cal. Jan. 26, 2015).

In addition to monetary damages, Fisher seeks a class-wide injunction requiring Defendant to cease the transmission of all pre-recorded calling activities. Because an injunction is separate and distinct from monetary damages, this argues in favor of granting a default injunction.

For the reasons stated above, the sum of monetary damages are reasonable in light of Defendant's actions and weigh in favor of a default judgment.

### 4. One Way did not appear—no dispute regarding material facts exists.

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. In reviewing this factor, courts repeatedly find that no genuine dispute of material facts exists when a defendant fails to appear and answer. *See Id.* ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. . . . Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion."); *see also Twentieth Century Fox Film Corp. v. Streeter*, 438 F.Supp.2d 1065, 1071 (D. Ariz. 2006) ("Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Film Corp.'s complaint as true (except for those relating to damages) and (2) Streeter has not made any attempt to challenge Film Corp.'s Complaint or even appear in this case."); *see also Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

Here, Defendant refused to appear and answer. As such, all factual allegations are taken as true. Plaintiff has pleaded all necessary facts to establish violations of the TCPA. Thus, there is no possibility of disputed facts and this element too weighs in favor of granting default judgment.

### 5. Defendant has made a habit out of ignoring lawsuits, thus, the possibility of excusable neglect is essentially non-existent.

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Courts consistently find the possibility of excusable neglect to be remote when a defendant is properly served with the complaint and summons. *See Benson v. Bingham, LLC v. Ventura*, 2010 WL 2681755, at *2 (D. Nev. July 1, 2010); *see also Ibarra v. Hernandez*, 2016 WL 8849021, at *3 (C.D. Cal. Jan. 15, 2016); *Sales Force Won! Limited v. Teixidor Enterprises Incorporated*, 2018 WL 20183919, at *2 (D. Ariz. May 11, 2018) ("Defendants were properly served with process in this matter and copies of the application for default and the present motion for default judgment. It therefore is unlikely that Wells Fargo's default was a result of excusable neglect.").

Here, Defendant was timely and properly served with a copy of the summons and complaint. (*See* Dkt. 12.) Further, Defendant received notice of entry of default and, yet again, took no action. (*See* Ex. A.) Moreover, Defendant has made a habit out of ignoring TCPA lawsuits. Specifically, it has failed to timely appear and respond to four separate TCPA complaints. In short, the aggregate of Defendant's actions leaves little doubt that no excusable neglect exists in this case. Thus, this factor weighs in favor of granting default judgment.

### 6. Defendant refuses to participate in this litigation; as such, a decision on the merits is nearly impossible.

The final *Eitel* factor requires consideration of "the strong policy of the courts in favoring decisions on the merits." *HICA Educ. Loan Corp. v. Eslao*, No. C 11-5135 CW (MEJ), 2012 WL 1413373, at *4 (N.D. Cal. Mar. 7, 2012). "However, the mere existence of Fed.R.Civ.P. 55(b) indicates that 'this preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Furthermore, decisions on the merits are essentially impossible when a Defendant does

not answer. *See Sales Force Won! Limited*, 2018 WL 20183919, at *2 ("Indeed, Defendants' failure to answer the complaint 'makes a decision on the merits impractical, if not impossible.'").

Here, Defendant was timely served and failed to respond. Defendant's refusal to appear and answer the complaint or seek an extension of time to respond makes it nearly impossible for a decision on the merits to occur. Left with no other options, Plaintiff now seeks a default judgment on behalf of himself and the Classes. As such, this factor too weighs in favor of default.

### C.   The Court should also certify the Classes as pled.

As a threshold matter, entry of default does not alter the Court's analysis for class certification. Certification under Rule 23 remains a necessary procedural requirement in order for the class to recover damages." *Whitaker v. Bennett Law, PLLC*, Case, 2015 WL 12434306, at *2 (S.D. Cal. Jan. 26, 2015). "As such, 'relief cannot be granted to a class before an order has been entered determining that class treatment is proper.'" *Id.* (citation omitted).

As explained below, class certification should be granted since both alleged classes meet the standards for certification, and the Court should exercise its discretion to certify them here.

#### 1.   Each element of Rule 23 is met and the Court should certify the Classes accordingly.

Class certification is appropriate when it is demonstrated that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S.Ct. 2231 (1997). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact among the class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Classes under both Rule 23(b)(2) and 23(b)(3). To certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so

11

that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). Similarly, to certify a class under Rule 23(b)(3) there must be questions of law or fact common to the proposed class members that predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court generally does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As explained further below, the proposed Classes in this case meet all of the requirements of Rules 23(a), (b)(2), and (b)(3), and therefore can be properly certified.

### a. The Numerosity requirement is satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is not a specific number of class members needed to establish numerosity; however, courts generally find numerosity to be satisfied when the class size exceeds 40 members. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-603 (C.D. Cal. 2015) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members.") (citation omitted). Generally, the Court is entitled to make common sense assumptions in order to find support for numerosity. *See* Alba Conte & Herbert B. Newberg, Newberg on Class Actions ¶ 7.20, 66 (4th ed. 2001).

Here, Plaintiff alleges that One Way placed pre-recorded telephone calls to thousands of consumers who fall into the defined classes. (Compl. ¶ 33.) Plaintiff has further pleaded similar complaints from consumers who were likewise subjected to Defendant's relentless harassment. (*Id.* ¶ 16.) Further, common sense dictates that for a financial telemarketing scheme to have any worthwhile result, Defendant would have had to call hundreds if not thousands of individuals.

Accordingly, the proposed Classes satisfy the numerosity requirement.

### b. The commonality requirement is satisfied.

12

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the plaintiff must demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Plaintiffs need not show, however, that 'every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single common question.'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

Here, all class members share common questions of law and fact, including: (1) whether Defendant's conduct violated the TCPA; (2) whether Defendant systematically made telephone calls to cellphone owners who did not previously provide Defendant with their prior express consent; (3) whether Defendant made the calls with the use of an pre-recorded voice message; and (4) whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called by Defendant. (Compl. ¶ 36.) In short, Defendant treated all class members alike in placing the alleged class. Thus, the class members' claims are alike.

Accordingly, the requirement of commonality is met.

### c. Plaintiff's claims are typical of the Classes' claims.

Typicality requires that Fisher's claims be typical of those of the Class members. Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

Here, Defendant's course of conduct was uniform across the Classes. To reiterate, Defendant placed prerecorded voice calls to all members of the classes. (Compl. ¶ 4.) There is no evidence to suggest that Defendant acted in any other way but uniformly as to all members of the

classes. Further, each member of the Classes has been damaged in nearly identical manner. Thus, each member of the Classes is entitled to statutory damages under the TCPA.

Hence, Plaintiff's claims are typical of those of the Classes.

### d. The adequacy of representation requirement is satisfied.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two questions are considered when determining the adequacy of representation: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (citation omitted).

Applied here, neither Plaintiff nor his counsel has any interests separate from those of the Classes. Fisher's share common positions with the class members' claims. Additionally, proposed class counsel have no interests adverse to those of the Classes. Proposed class counsel are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the present action. Proposed class counsel have regularly engaged in complex litigation involving the TCPA and, further, have the resources necessary to conduct litigation of this nature. (*See* Firm Resume, attached hereto as Ex. B.)

Accordingly, Plaintiff and his counsel have and will continue to adequately represent the interests of the Classes, and this requirement is met as well.

### 2. The Proposed Classes Meet the Requirements of Rule 23(b)(2).

Once the prerequisites of Rule 23(a) are satisfied, the Classes then need to satisfy one of the three subsections of Rule 23(b). In this case, Plaintiff seeks certification of the proposed Classes pursuant to Rule 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the defendant must have acted or failed to act on grounds generally applicable to the proposed class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "In

14

contrast, because (b)(2) classes seek declaratory or injunctive relief that is indivisible among the class, 'the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action.'" *Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 259 (N.D. Cal. 2016).

In the present case, Defendant's misconduct was conducted on a uniform basis to all members of the Classes. To recap, Defendant placed pre-recorded telephone calls using an ATDS without prior express consent to thousands of individuals. (Compl. ¶¶ 13-19, 33.) Nothing about Defendant's conduct varied in any significant manner with respect to members of the Classes. Furthermore, given the situation the Court is faced with—evaluating a motion for class certification in the absence of key information that only Defendant possesses—certification pursuant to Rule 23(b)(2) is particularly apt. That is, (b)(2) classes do not require the Court to direct notice to all class members and the Court can put an end to Defendant's unlawful conduct. Furthermore, Defendant has refused to appear or answer for its conduct in either this lawsuit or in any of the three prior lawsuits and instead chooses to continue to operate with a complete disregard for the applicable laws. Therefore, the Court should finally put an end to Defendant's repeated and continued violations of the TCPA and certify a class pursuant to Rule 23(b)(2).

The requirements of Rule 23(b)(2) are satisfied and the classes should be certified.

### 3. The proposed Classes also meet the requirements of Rule 23(b)(3).

Plaintiff also seeks certification under Rule 23(b)(3), which provides that a class action may be maintained where questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, this case readily meets both of these requirements.

#### a. Common questions of law and fact predominate.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). "When 'one or more of the central issues in the action are

15

common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).

In the case at hand, the claims of Plaintiff and of the Classes arise out of a standardized course of conduct. That is, Defendant places prerecorded voice calls using and automatic telephone dialing system in order to reach a large number of consumers. (Compl. ¶¶ 13-19.) Further, Defendant called each class member for the same purpose. (*Id.* ¶ 13.) Thus, common issues predominate. The claims are also subject to common proof. And should this case proceed to trial, Defendant would not be able to raise any meaningful individualized evidence. Instead, the answers to the common questions of law and fact would be the same for all class members. In short, there is no evidence that Defendant treated any class member in a divergent manner.

Thus, it can only be said that the common issues of law and fact predominate so as to justify certification pursuant to Rule 23(b)(3).

### b. The class action mechanism is superior to other available methods for the litigation of this matter.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). "'[S]uch a determination lies in an area where the trial court's discretion is paramount.'" *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468 (S.D. Cal. 2014). "'Where damages suffered by each class member are not large, this fact weighs in favor of certifying a class action.'" *Id.* (citation omitted). "'The most compelling rationale for finding superiority in a class action' is the 'existence of a negative value suit.'" *Id.* (citation omitted).

This case is the classic case for a class action being the superior method for fair and efficient adjudication. Plaintiff is seeking statutory damages for each violation of the TCPA. Thus, given the small amount of damages likely to be recovered, pursuing suits on an individual basis would be prohibitively expensive for all members of the classes. Further, when considering the cohesive nature of the class members' claims, individualized trials would result in highly

duplicative cases in which courts may reach different results based upon the same set of facts. Moreover, the individualized trials would result in a massive waste of judicial time and resources.

As such, the superiority requirement is also satisfied.

### D. Finally, Plaintiff asks this Court to grant his motion for leave to conduct limited discovery regarding damages.

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . *or when authorized by these rules, by stipulation, or by court order.*" Fed. R. Civ. P. 26(d)(1) (emphasis added). Courts have found that post-default discovery is permissible and can be necessary to establish damages. *See TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 281 F.R.D. 683, 691 (S.D. Fla. 2012); *see also Microsoft Corp. v. Raven Technology, Inc.*, 2007 WL 438803, at n.2 (M.D. Fla. Feb. 8, 2007).

Here, as explained above, Plaintiff requests discovery to establish class-wide damages. Plaintiff requests a 120-day period to conduct limited discovery to serve written discovery on Defendant and to serve third-party subpoenas to obtain Defendant's outbound call records (which will be used to identify Class and the number of calls each Class member received).

Thus, the Court should grant Plaintiff's motion for limited discovery.

## IV. CONCLUSION

One Way had ample notice of this lawsuit and willfully passed on its chance to defend itself against the well-pleaded allegations at issue. Fisher respectfully requests that the Court enter default judgment in his favor on both causes of action, certify the Classes, appoint Steven L. Woodrow and Patrick H. Peluso as Class Counsel, grant Fisher's request to conduct discovery as to damages, and award such additional relief as it deems necessary, reasonable, and just.

Respectfully submitted,

Dated: May 29, 2018  **NICK FISHER**, individually and on behalf of all others similarly situated,

By: _s/ Patrick H. Peluso_
    One of Plaintiff's Attorneys

17

David Chami
Price Law Group, P.C.
1204 E. Baseline Rd., Suite 102
Tempe, Arizona 85283
Tel: 866-881-2133
Fax: 866-401-1457
david@pricelawgroup.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

* *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 29, 2018, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, as well as by mailing a copy to Defendant's principal place of business via U.S. Mail.

/s/ Patrick H. Peluso